16-1338 Shuler v. McDonald Shuler v. McDonald Please proceed. How do I say your name? Boltzner? Belzner, your honor. Belzner. Mr. Belzner. Good morning, your honor. May it please the court. Just out of curiosity, on your gray brief, you have Mr. Puller, Jr. Is it three or junior? Junior. He was Chesty's son, who went to Vietnam, lost both legs. And he's, okay. Yes, sir. I thought he was deceased. I didn't realize he was still alive. Right. Yeah, he came back, wrestled with alcohol, other demons, and then seemed to triumph over them, and then tragically killed himself late in the game. Oh, I see. Okay. It's the name of the clinic. It's the name of the clinic. Got it. Okay. Okay. There we go. Okay. I understand now. Thank you. Your honors, the issue presented by this case is the standard and degree of scrutiny that the Veterans Court is required by its statute to apply to the reasoning of the Board of Veterans' Appeals. Mr. Shuler's claim turns on one single fact. Was he or was he not told about the risk of nerve injury before he consented to the surgery that he underwent to repair a hernia? The only direct evidence on the point is his testimony that he wasn't told. The Board inferred the contrary, that he was told based on circumstantial evidence relying on presumptions and inferences and evidence. Whether he was told or not, isn't that a fact-finding? That is, Your Honor. Absolutely. And we wouldn't have the authority to review that under our very limited jurisdiction, would we? True, Your Honor, and we're not asking the court to do that. We're focused on the reasoning the board used to get there, and we raised a number of challenges to the way the board reasoned its way to this factual conclusion, which we think were quite inconsistent with normal reasoning processes of rational decision-making that agencies are required to exercise, and the Veterans Court did not address that. That's still fact-finding, isn't it? I mean, the board could say, we're deciding the fact this way because the sky is blue today. That's completely arbitrary, but unless there's some legal error, then we can't review that fact-finding. Well, Your Honor, I hope you can, and I hope the Veterans Court can. Well, the Veterans Court can. The Veterans Court reviews for clear error, and that might be clear error, but if the Veterans Court inexplicably says that's not clear error, then we're out. It doesn't matter how arbitrary, wrong, incorrect, clearly erroneous. Congress didn't give us that jurisdiction. Your Honor, I think that the… Even without those kinds of hypotheticals, we've seen factual determinations that pretty obviously were wrong, and there was nothing we could do about them. Well, what we're asking this court to do is to say that the Veterans Court should have done something about it. We're asking this court to look at what the board used in the way of reasoning, so I guess the court would have to look at the reasoning that the board talks about, what it says in its decision, but it doesn't have to second-guess that reasoning. It simply has to look at whether the Veterans Court should have done so, and our contention is that we presented all these instances of arbitrary decision-making, which the Veterans Court should have addressed. If the Veterans Court doesn't do it, this court has authority to review how the Veterans Court behaves in conjunction with its statutory mandate. Not when it's reviewing facts. But, Your Honor, it wasn't… If we agree with you, that opens up a massive loophole so that every time you think the Veterans Court incorrectly applied the clearly erroneous standard, we get to review their reasoning. At the end of the day, maybe Congress should have given us jurisdiction to review facts, but they didn't, so I don't understand how your argument is a legal rule that was incorrectly used here. Well, Your Honor, there's a distinction between making a finding of fact and reasoning to get there, and maybe I can illustrate it this way. If, in this case, Mr. Shuler says I was not told about this risk, if a surgeon who was involved in the process had come in and said, I remember telling you about this, I always told patients about this, then the board would have had a classic weighing of evidence and still has to have good reasons. Now, Your Honor, to pick up on your example… We don't get to judge the reasons. But the Veterans Court has to judge the reasons. That's the essence of it. They did, and they disagreed with you, and you disagree now with them. But that's something for them to do. Let me give you the reverse hypothetical. Let's assume the veteran comes in and says, I didn't get this testimony, or I didn't get this notification. The treating physicians came in and says, you know what? I reviewed my records, and I don't see any instance where I gave this notification. And yet the board makes the factual finding that, oh, well, the doctor probably just didn't remember. This is routine. He probably gave it to him. We're going to find that they got notification. And the Veterans Court says that's not clearly erroneous. Where do we get, even if we think it's clearly erroneous, how do we, as a matter of law, get to that factual finding? I think it has to be the distinction between the review the Veterans Court does for clearly erroneous versus reviewing the reasoning for arbitrary and capriciousness. And if there's not a distinction there, Your Honor, and maybe there isn't, but if that's the case, then I would entreat this court to issue a decision that says that, that says Congress messed up, because Congress meant to have review. We've written that opinion many times. Well, we keep trying, Your Honor. But, I mean, let me try to help you, because you're not going to win on what you're asking for right now, because you're asking us to do something we simply don't have the authority to do. But one of the things we do have the authority to do, which I think you've preserved in your brief, is to consider rules of law, for example, with regard to evidence. Did the lower tribunal adopt a different rule of law regarding what is necessary to establish routine or habit or something like that? Maybe there's something there that you have the ability to get us to look at. I don't know, but what we can't look at quite clearly. I mean, I don't mean to shut you down. If you want to keep arguing it, you can, but I have to tell you it's a lost cause. But, you know, we really just don't have the ability to review fact findings from the Veterans Court. We don't have that authority. But we can review rules of law and even rules of evidence, evidentiary law, not particular evidentiary determinations, which would be factual, but rules of law with regard to evidence. I think that you made some arguments about habit and routine in your brief.  Absolutely, Your Honor. My arguments are that the board necessarily relied on this statement by the doctor, which was sort of appended to his opinion about foreseeability of the risk. He made the comment that it would have been disclosed in a written surgical permissions slip, he thought. The board relied on that as evidence of what actually happened in 1997. And our contention is that necessarily that means the board had to treat that as a report of fact. It's not an expert opinion, it's a report of what the doctor believed happened in 1997. And our contention was that the board used that and the Veterans Court permitted that use, which this court has held in the Guardian case and others establishes a rule of law by the court if it permits the board to use reasoning in a certain way. Here it used that reasoning to allow this testimony to come in without any indication that the doctor had any knowledge of what went on in 1997, that he had any knowledge of the routine practice of the surgeons. So you're making a foundational argument. Absolutely, Your Honor. The Veterans Court allowed this evidence to be treated as evidence of what happened as a matter of fact when there was no foundation for that testimony being reliable on that point. And this comes back to the integrity of the system. When we've got a jury involved, judges exercise that role of saying, we're not going to allow you to consider evidence of that sort without the proper foundation because we don't want you to misinterpret its property value. Here we have administrative law judges, so it's a more wide open system. But those judges are still bound. Was there a foundational objection made and preserved? We don't have that opportunity, Your Honor, in the Veterans Court. All this evidence comes in on paper. There's no hearing. And we didn't have any idea that the board was going to rely on this evidence in this fashion until the board issues its decision. And then by then, all we can do is go to the Veterans Court and say, this is not proper reasoning. This is not proper evidence to be considered for this purpose. You can say it in your written submissions, though. Well, we did argue it several times, actually. In the panel motion and in the recon motion, particularly at the Veterans Court, we did argue the whole issue of habit evidence and how this was no foundation. And the Veterans Court response was simply, well, there's no indication that the board treated it that way. And our contention is the board had to have treated it that way. Otherwise, it has no probative value on the question of what happened in February of 1997. It has to be factual evidence, in other words, and it was allowed to come in without any foundation. Do you have an objection to this kind of evidence altogether? Or is it just in this case you think the board improperly accepted it and the Veterans Court improperly approved that use? I think, as in the non-veteran litigation system, it is evidence that can be used and relied on properly when the foundation is met. So you're not taking the position that as a matter of law, you can't use this kind of – I mean, you don't want to call it expert testimony, but it seems like it's pretty akin to expert testimony because he certainly didn't have firsthand knowledge of the facts. He was submitting a statement about what he thought would have happened. And so you're not advocating for a legal rule that this kind of expert testimony can never be used to establish notice? Well, actually, there are a couple of things in there, Your Honor. We're not arguing that habit, routine evidence could never be admissible and used by the VA system, so that part I agree with. We did say, however, that this is not really expert testimony the way we think of classic expert testimony in medical malpractice cases. I don't want to get caught up in terminology here. I mean, I don't think the rules of evidence apply to the Board in the same way they do to civil litigation, so I don't think we have to talk about qualifying this person as an expert in the light. No, no, all I'm saying, Your Honor, is that classically expert testimony is, I tell you what all doctors generally do. This is what's accepted. This is the norm, and it's used to establish a standard of care, and we know what the doctor in the case actually did, and then his behavior is measured against that standard. You think that kind of evidence is okay in Board proceedings? Oh, it could be in that case, but that's not what it was used for. But see, that's the problem. If you think that that kind of evidence is okay, then we're back into a dispute about whether this particular evidence meets that particular standard, which is at best an application of law to fact, which, again, we can't review that. Your Honor, I think it's pure question of law, because the question is can you use habit evidence or routine practice evidence to prove facts without having a foundation laid? That's a rule of evidence, and judges apply it all the time in other litigation, and it should have been applied here. So let me make sure I understand. So you're saying the legal question that we ought to look at is if a doctor is going to come in and say it would have been routine to do this, there has to be some foundation. You can't just have testimony from someone who has no factual foundation in this case say, well, it would have been routine, without establishing that, in fact, it would be routine to inform someone of this particular possible side effect or consequence. Exactly. And so you're saying that even if the Board isn't bound by the normal rules of evidence, nonetheless, that's one that ought to inert to the benefit of a veteran if the government is going to introduce habit or routine as a basis for substantiating notice, then they have to actually show that there was some habit or routine in place at the time. That's right. That's your legal argument, right? That's legal. Okay, why don't we hear from the government now? Good morning, Your Honors, and may it please the Court, I will move straight to what Your Honor has identified as a legal argument and to discuss the types of evidence and that being something that is within this Court's jurisdiction. The Veterans Court determined that the Board did not view this particular 2007 opinion as habit evidence. If you read the doctor's note, it certainly doesn't say, I was practicing at the time. It doesn't establish what you would need for a Rule 406. But as has already been discussed, the federal rules of evidence don't apply here. But rather what the Board did was say, we are looking at the contemporaneous evidence that there was some sort of informed consent discussion. We know this from the generic consent form. So it was looking at the form as well, saying, given that, and given that we know this is a common complication, we think there was some discussion. Based on what? We think that he was informed of this. Why? The doctor said because it would have been a habit or normal routine to inform someone of this likely complication. That does go to the heart of habit and routine. I don't know how else you let that evidence in otherwise. It is part of the analysis of what the generic consent form means. It's not simply about the 2007 note, but also in conjunction with knowing that there was a conversation, that Mr. Shuler says nothing was discussed other than the risk of death from anesthesia. And the Board found, and I can get the exact language, but the Board said that it was hard to imagine what else other than the potential complication of continued pain would have been discussed. But all of that predicates on the idea that this is a common side effect that would have been discussed. That's correct. Habit and routine, that it would have been normal for a doctor to have discussed this complication to anyone having this surgery. But that finding has no foundation that I can see in the evidence of record here. And unless you are saying that there ought to be no foundational requirement in veterans' cases for habit or routine evidence. Your Honor, I would say that our position is that the Board did not view this as sort of the heightened, we have established that this is what doctors in 1997 did, but given that we know there was some conversation, that it could look at the doctor's note and say that he was sure this was the type of complication that would be... Why? Why is he sure that this is the kind of complication that would have been discussed in a conversation he didn't participate in? Because this is a common occurrence. And so it would have been routine to discuss the common side effects with a patient facing the surgery. Yes, Your Honor. I recognize that it sounds very similar to routine evidence. And I think the key is whether, and maybe this is a distinction that this court doesn't need to go into because the rules of evidence don't apply, but the key is you don't need that level of foundation that you would need in a civil system, civil court, civil case that you would need... We have this doctor's report, right? There's no suggestion that the doctor's report wasn't gotten in the way you usually get doctor's reports in these VA cases, right? I'm sorry. I'm not sure I follow Your Honor's question. I mean, the VA said they asked for an opinion from this doctor, right? Right, on a variety of issues. That's routine, right? And so he issued his report. That's right. And then the board looks at the report and decides whether it's probative or not. That's correct. And the Veterans Court gets to review whether it's probative or not. That's correct. And so do we get a review whether a particular piece of evidence is probative or not? A particular piece of evidence, no, Your Honor, but as a category, right, this court does have the option of saying... Sure, but I don't think that your friend suggested that this type of evidence is inadmissible altogether. It's whether it's reliable or not. That's... Counsel can say what his argument is, but I think that's right, Your Honor. But I thought that I understood that we have the authority to look at whether a type of evidence is admissible, not this particular piece and the fact findings made on it, but a type of evidence. Isn't that right? That's correct. So would a type of evidence be a determination that testimony by a single doctor satisfies habit or routine that would be necessary to establish normal practice? Would that be a type of evidence? I'm sorry. Let me make sure I understand the type of evidence. I mean, you know what my concern is. My concern is very clear. I've telegraphed it about as clearly as I can possibly telegraph it. That my concern is that the board has determined that this one doctor said he would have been informed of this complication or risk without establishing that that was, in fact, the normal habitual or routine practice to inform people with this surgery of this particular issue. The board did not, and if you look at the board's decision, the board did refer to this doctor's opinion, but also had a much more extensive discussion of the informed consent form itself, and this was a weighing of the evidence. Tell me what you want me to look at then. Yes, Your Honor. At the appendix at page, well, it actually starts on page 36 and goes all the way to page 43 is the discussion of, and the board's weighing of the evidence, and that evidence is the veteran's lay testimony as well as the informed consent form that was signed as well as the treatment note that was done in conjunction saying that informed consent was given, and then also the 2007 opinion. The 2007 opinion is referenced in just one part. It's on page 40 to 41 where the board talks about the medical professional's opinion in 2007, but it ties that into what the consent form means, and again, this is a very fact-specific, what does this consent form mean, how are we weighing that against the lay testimony of the veteran, and the board explained that it was giving great weight to the form itself. It was not relying on page 39. It says the board acknowledges that the informed consent form was generic in nature, but it nevertheless places great weight on it and discusses that it was given weeks before the surgery, that it's a contemporaneous evidence of an informed consent discussion, and then also goes on to discuss the veteran's testimony. Again, this is very fact-specific in terms of looking at the form, what does the form mean, and then also given the veteran's testimony and his change in testimony, how the board determined, well, we think there was a discussion, and it's not just from this evidence from the 2007 opinion, but also the form itself, the signed contemporaneous documentation. But wait, the form itself simply says risks and complications were discussed. That's correct. It doesn't articulate with any precision the types, right? That's correct. So how do we know he was informed that stubbing his toe was a possibility during surgery? Do you understand my point? Yes. The form is general in nature. You can't rely on it alone to say that every possible complication would in fact have been discussed, like the fact that somebody could have stubbed his toe in the emergency room when he was under anesthesia. It's an absurd concept, of course, and it's meant to be, because what I'm saying is the form just says he was informed of risks and complications. Now we have to figure out what are the types of risks and complications he would have been informed of, and unless I'm mistaken, the only piece of evidence that brings us to the conclusion the board reached is the 2007 doctor's report.  But it's the only piece, because the informed consent document itself doesn't list this as a possible complication. It does not list this particular. You didn't introduce any evidence, for example, textbooks that say the most common complication associated with this surgery is blank. You didn't introduce into the record any piece of evidence that would have demonstrated that, right? Can I ask you this? How would you introduce evidence at the board? How would someone, anyone? I'm sorry, Your Honor. Generally, the board does not seek out specific testimony, for example, from the doctor. It does have the power to, and this is referenced in the briefs. The board has a record that it reviews. It reviews a record, but it can decide that there needs to be more information, and this happened in this case. The documentation of the informed consent wasn't there. It went back and looked for those documents. It was added to the record. The informed consent document is not the only evidence upon which the board relies, is it? No, Your Honor. The informed consent form, there's basically three documents related to this. They also rely on an absence. That is, they rely on the failure of the veteran to initially claim that he wasn't told about nerve entrapment for five years, even though he had other dealings. It relies on that. It makes a drawing inference from that. It does make a credibility determination based on the veteran's testimony. I'm not sure that that would be considered evidence of an absence of evidence, but rather in its analysis of the testimony. They say, in other words, even though he filed a claim for compensation, his initial statement centered on the fact that surgery had not successfully relieved his pain, and it was not until more than five years into the appeal process. Right. The length of time and the passage of time was certainly part of its analysis. The reliability of Mr. Shuler's memory and his testimony was implicated by the length of time, the fact that his testimony had changed over time. At first he said he hadn't been informed of anything except for the death from anesthesia, but then there was the forms that were found that showed that he signed a form. The anesthesia form, in fact, lists multiple things other than death that were related to Mr. Shuler, and he signed that document. Then an additional form, the generic consent form, is an additional form about the hernia procedure. Then also there is a treatment note from the doctor giving that consultation signed by the doctor that actually goes through and says, we talked about the risks. Again, it's generic. It doesn't discuss a specific risk. Where is that in the record? Yes, that's at page 51 of the appendix. It says informed consent certification at the top, and that's signed by the counseling physician. The previous page is the signed consent form, and again, that's the generic form. Then the previous page on 49 is the anesthesia consent form. Those are the contemporaneous pieces of evidence that there was some informed consent discussion that, again, is not as weighty as if it had listed out specific risks, but it's not irrelevant to whether proper informed consent was given. The board made a factual determination. It weighed this contemporaneous evidence with Mr. Shuler's testimony, and in McNair that specific scenario is discussed and is explicitly stated as a factual determination. Would it be fair to characterize your argument as follows, that even if we, the court, would find it problematic for the board to have made fact findings based on habit or routine based on the assertion of a single doctor as a category of evidence and a concern about evidence as a question of law, that there are certain predicates you have to establish foundation, that's not really an issue in this case because that's not the way that the board relied on this evidence. They looked at this evidence as just one piece in conjunction with everything else, and they reached a very case-specific fact finding. This is not a case for considering what ought to be required for the VA, for the government to establish habit or routine for disclosures. I think that's a fair assessment of the argument. Yes, Your Honor. I think your time is up. Thank you, Your Honor. Your Honor, I just have a minute and I think that's all I need. Your Honor is absolutely right in pointing out that the only evidence at all that raised anything more than the possibility that Mr. Shuler was told is the doctor's statement if it is treated as habit and routine evidence because everything else simply raises the possibility. Yes, he had a discussion about risks and complications, but we don't know what was discussed. It was a generic form sign. It doesn't say anything about this risk. So the only thing that indicates that it probably would have been discussed is this doctor's statement, which was admitted and which we think was improperly relied upon. As Your Honor wrote in your concurrence in Gamble, much more where these administrative processes are informal and Congress clearly wanted them to be informal, you still have to preserve the fundamental fairness of the process. And that's citing the Richardson case from the Supreme Court and this Court's decision in Hodge, which also mentions the appearance of reasonableness and fairness. And here we've got the use of evidence that had no foundation and the Veterans Court allowed that to be used to establish the crucial fact in the case, which is he was told. And if that's what is going to be permitted, then Congress really did fail in creating a system of judicial review. Could the Board have inferred from the use of the word risk, plural, that the doctor is saying he told him about all the risk? I think that is what the Board did infer. It sort of assumed that if there was a discussion about risk... So even though we don't like that and we think it's pretty sloppy reasoning, they'd have a factual basis for doing that. Well, they'd have a factual basis for assuming that multiple risks were discussed, but was this risk discussed? That's the question. And the Veterans Court in McNair said you can't presume from a generic discussion that risks were disclosed, that a particular risk was disclosed, and that's what's at issue in a negligence case like this, where the issue is lack of informed consent. So, yes, some risks were probably... And he admitted, and he said in 2005, before this was ever an issue in the case, they asked him, do you remember being told about the risk? He said, yeah, I remember they told me I could die from the anesthesia, and that is indeed on the anesthesia consent form. So we certainly acknowledge that some risks were discussed, but he has adamantly maintained this risk was not discussed and there is not a shred of evidence to indicate that it was, other than this doctor's statement, if it's read to be a statement. And, by the way, the board read it as a statement that it would have been disclosed somehow, and what the man said was it would have been disclosed on a written form for the patient to sign, which, of course, it was not. Okay, Mr. Beltsner, we have your argument. The case is taken under...